IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


PAUL SVINDLAND, et al.          :      CIVIL ACTION
                                :
        v.                      :
                                :
THE NEMOURS FOUNDATION,         :
et al.                          :      NO. 05-417
_____

ROBERT DADDIO, et al.           :      CIVIL ACTION
                                :
        v.                      :
                                :
THE A.I. DUPONT HOSPITAL FOR    :
CHILDREN OF THE NEMOURS         :
FOUNDATION, et al.              :      NO. 05-441


MEMORANDUM

McLaughlin, J.                              August 21, 2009

        The plaintiffs in these medical malpractice cases are
the parents of infants who died after undergoing open-heart
surgery at the A.I. duPont Hospital for Children in Wilmington,
Delaware.  These cases were initially assigned to the Honorable
Berle M. Schiller of the Eastern District of Pennsylvania.  After
a jury verdict for the defendants in the Svindland case, the
Svindlands appealed to the United States Court of Appeals for the
Third Circuit.  The Court of Appeals vacated the jury verdict and
remanded the case for a new trial.  After remand in 2008, both
cases were reassigned to me.

        In September and October 2008, the parties filed
motions concerning the enforceability of subpoenas served by the
plaintiffs on two third parties, the Children's Hospital of

Philadelphia ("CHOP") and Dr. James Goin, a statistician at CHOP. Through these subpoenas, the plaintiffs sought to obtain the raw data that served as the basis for publications of two studies done at CHOP (the "CHOP data").  In a memorandum opinion filed on May 19, 2009, I denied the plaintiffs' motion to compel CHOP and Dr. Goin to produce the data and granted the defendants' motion for a protective order over the data.[1]

On June 1, 2009, one week before the <u>Svindland</u> trial was set to begin, the Svindlands filed a motion asking me to recuse from sitting as trial judge.  On June 5, 2009, the Daddios filed an identical motion.  The basis for these motions was my representation of CHOP in an antitrust action filed in 1993.  <u>See</u> <u>Huhta v. The Children's Hosp. of Phila.</u>, No. 93-2765, 1994 WL 245454 (E.D. Pa. May 31, 1994), <u>aff'd</u>, 52 F.3d 315 (3d Cir. 1995).[2]  The plaintiffs argued that this representation created an appearance of partiality and presented the risk that my rulings might be influenced by extrajudicial knowledge of facts.[3]

_____

[1] Judge Schiller previously denied the plaintiffs' motion to enforce the subpoenas in the <u>Daddio</u> case and their motion for reconsideration of that decision.  <u>See</u> <u>Daddio</u> Docket No. 98.  By order dated March 23, 2007, those decisions were incorporated into the <u>Svindland</u> case.  <u>See</u> <u>Svindland</u> Docket No. 98.

[2] Plaintiffs' counsel have explained that it was not until after the CHOP data ruling that they discovered my representation of CHOP.

[3] In their motion, the plaintiffs also ask me to reconsider my decision regarding the CHOP data.  The plaintiffs have not stated a basis for reconsideration other than my prior

In order to give the parties as much notice as possible of my decision on the recusal motions, I told counsel for the parties during a telephone conference on the morning of June 5, 2009, that I would deny the motions.  I told them, however, that I would issue a written decision at a later date so as not to delay trial of the Svindland case.

Also on June 5, 2009, the plaintiffs filed a Petition for a Writ of Mandamus with the United States Court of Appeals for the Third Circuit based on my denial of their recusal motions.  They also filed an emergency motion to stay the proceedings until a ruling on their petition by the Court of Appeals issued.  I agreed to stay the Svindland case, but was informed on the evening of June 5 that the Court of Appeals had denied the mandamus petition.  The Svindland trial started on June 9, 2009, and the jury returned a verdict for the plaintiffs on June 18, 2009.  By memorandum opinion dated August 21, 2009, I granted the defendants' motion for summary judgment in the Daddio case.  I will now explain my rationale for denying the plaintiffs' recusal motions.

---

representation of CHOP.  None of the other bases for reconsideration is present.  See Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

Under 28 U.S.C. § 455, a judge shall disqualify herself in any proceeding in which her impartiality might reasonably be questioned.  She must also disqualify herself in cases where she has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.  The test for recusal is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned.  In re: Kensington Int'l, Ltd., 353 F.3d 211, 220 (3d Cir. 2003).

Whether to recuse from hearing a matter lies within the discretion of the trial judge.  United States v. Wilensky, 757 F.2d 594, 599-600 (3d Cir. 1985).  Judicial recusal is not to be undertaken lightly, and, as courts in this circuit and in other circuits acknowledge, there is as much obligation upon a judge not to recuse herself when there is no occasion to do so as there is for her to recuse when there is.  See, e.g., Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987); Wolfson v. Palmieri, 396 F.2d 121, 124 (2d Cir. 1968) (quoting In re Union Leader Corp., 292 F.2d 381, 391 (1st Cir.), cert. denied, 368 U.S. 927 (1961)); Lynch v. City of Phila., No. 08-4780, 2009 WL 1424489, at *1 n.3 (E.D. Pa. May 20, 2009); Smith v. Danyo, 441 F. Supp. 171, 175 (M.D. Pa. 1977), aff'd, 585 F.2d 83 (3d Cir. 1977).

Where a party alleges bias or prejudice, "the alleged bias and prejudice to be disqualifying must stem from an

4

extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." United States v. Grinnell Corp., 384 U.S. 563, 583 (1966).

As an initial matter, I see no reason to recuse from sitting as trial judge in the Daddio case.  The plaintiffs have explained that their desire to see the CHOP data stemmed from the fact that they believe the CHOP data to be the only set of data in existence from which the effects of cooling times used during pediatric cardiac surgery can be analyzed.  Even before I denied the plaintiffs access to the CHOP data on May 19, 2009, however, the Daddios had disavowed that their theories of negligence and causation related to cooling times.  Plaintiffs' counsel did not explain any other way in which the CHOP data are relevant to the Daddio case.  CHOP has no other involvement in the case.  My representation of CHOP cannot be a basis for recusing from the Daddio case.

As for the Svindland case, the plaintiffs do not argue that my decision on the merits of the CHOP data issue stemmed from a bias against them or in favor of the defendants.  Rather, they argue that my prior representation presents the appearance of bias or partiality toward CHOP.

I do not think that my representation fifteen years ago of CHOP, a third-party recipient of a subpoena in this case,

leads to the appearance of bias or partiality toward CHOP.  In the earlier case, Dr. James Huhta, a pediatric cardiologist, brought an action alleging various antitrust and pendent state law claims against CHOP; the University of Pennsylvania; The School of Medicine of the University of Pennsylvania; Edmond F. Notebaert, the CEO of CHOP; Drs. Elias Schwartz, Bernard J. Clark, and Alvin J. Chin, physicians at CHOP.  I represented CHOP and Mr. Notebaert.

Dr. Huhta, the former Chief of the Division of Cardiology at CHOP, complained about certain limitations placed on his privileges at CHOP after he left CHOP and opened a group practice at Pennsylvania Hospital.  The district court granted summary judgment to the defendants on the antitrust claim and declined to exercise jurisdiction over the state law claims.  The United States Court of Appeals for the Third Circuit affirmed that decision.  See Huhta v. Children's Hosp. of Phila., 52 F.3d 315 (3d Cir. 1995).  Dr. Huhta then brought his state law claims against CHOP and Mr. Notebaert in the Court of Common Pleas.

Neither Mr. Notebaert nor CHOP's General Counsel in 1993 is currently at CHOP.  Dr. Norwood was at CHOP during the earlier antitrust litigation as the Director of Cardiothoracic Surgery but was not a party in the Huhta case.  My memory is that Dr. Norwood was not deposed in that case.  I do remember a meeting with Dr. Norwood during the litigation, but do not recall

any specifics about that meeting.  Nor do I see any connection
between the <u>Huhta</u> case and the data sought from CHOP here.

The plaintiffs do not allege that I have actual
knowledge of disputed evidentiary facts, as is required to
support recusal under § 455(b).  Rather, they contend that I may
have extrajudicial knowledge about parties or issues "that may
have been forgotten due to the passage of time . . . but may be
recalled as the evidence is presented during the trial of this
case."  <u>See</u> <u>Svindland</u> Docket No. 192 at 6.

The plaintiffs have not alleged any facts or general
category of facts related to this case that I knew at that time
or that might be remembered during the trial of these cases, or
how those facts might influence my decisions.  The plaintiffs'
general and speculative allegations did not require recusal at
the time of their filing; moreover, now that the <u>Svindland</u> case
has gone to trial, I can say categorically that I recalled
nothing from the <u>Huhta</u> case that related to the issues in the
<u>Svindland</u> case.

Finally, I am very sensitive to the fact that a judge
may not recuse herself if the requirements for recusal are not
met even if it might be more convenient to do so.  I am not
persuaded that a reasonable person with knowledge of all the
facts and circumstances surrounding my representation of CHOP and

CHOP's involvement in this litigation would question the my impartiality.  The plaintiffs' motions for recusal are denied.

An appropriate Order shall issue separately.